```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


INTERNATIONAL UNION OF         )
OPERATING ENGINEERS, LOCAL 150 )
AFL-CIO,                       )
                               )
            Plaintiff          )
                               )
       v.                      )    Case No. 2:06 cv 280
                               )
HOBART CRANE RENTAL, INC., a   )
Corporation; HOBART WELDING &  )
FABRICATION, INC., a Dissolved )
Corporation; TRIPLE "C"        )
CONSTRUCTION EQUIPMENT LEASING,)
LLC., and X-PRESS CRANE        )
COMPANY, LLC., A Limited       )
Liability Company,             )
                               )
            Defendants         )
```

OPINION AND ORDER

This matter is before the court on the First Motion for Summary Judgment filed by the defendants on January 19, 2007. For the reasons set forth below, this motion is **DENIED**.

Background

During the time period relevant to this cause of action, the defendant, Hobart Welding and Fabrication, was owned and operated by Robert Czarny. (Complaint ¶ 4; Exhibit C, p. 4) Incorporated in 1978, the company grew and by 1991, Hobart Welding was a non-union company engaged in the fabrication and installation of steel beams used in residential construction. (Defendants' Memorandum, Exhibit A, p. 1) A separate company was incorporated in 1982 called Hobart Crane Rental. (Cmplt. Exh. C, p. 4) This

company, engaged in the rental of cranes and operators to various contractors, was owned by Robert Czarny's wife, Linda. (Cmplt. Exh. C, p. 4)

On May 22, 1991, Hobart Crane Rental executed a memorandum of agreement with International Union of Operating Engineers, Local 150 AFL-CIO. By the terms of the agreement, Hobart Crane became subject to the collective bargaining agreement in place between Local 150 and the Calumet Building Association. (Cmplt, ¶¶ 7, 8) This agreement established a grievance and arbitration procedure that required the parties to enter a three-step process before a dispute could proceed to arbitration. (Cmplt. ¶ 9) According to the agreement, the arbitrator's decision was binding on the parties to the master agreement. (Cmplt. ¶ 9)

The agreement also required the employer to pay specified rates to any employee in the bargaining unit for a minimum of two hours once the employee reported for work. (Cmplt. ¶ 9) If the employee began work, the employer was obligated to compensate the employee for a minimum of an eight-hour day. (Cmplt. ¶ 9)

In March 1999, a dispute arose between Hobart Crane and Local 150 which the parties did not resolve at the intermediate steps in the grievance process. The dispute centered upon two non-union Hobart Welding employees, Larry Mason and Jeffrey Bonick, who were issued union permits to work as crane operators. (Cmplt. Exh. A, p. 1) On occasion, Bonick and Mason were assigned to crane operator jobs of less than a full day's duration and,

upon completing this work, returned to work for the balance of the day at the lesser, Hobart Welding, non-union wage rate. (Cmplt. Exh. A, p. 1) After approximately two years, Mason and Bonick informed their employer that this pattern violated the collective bargaining agreement's eight-hour provision. (Cmplt. Exh. A., p. 2) Subsequently, the employees were notified that Hobart Crane could not afford to pay them under this requirement, and both were laid off. (Cmplt. Exh. A, p. 2)

These events were the basis for a complaint before the National Labor Relations Board, alleging that the circumstances gave rise to an unfair labor practice under 29 U.S.C. §158(a). On January 4, 2001, NLRB Administrative Law Judge Marion C. Ladwig determined that Hobart Crane did not meet the NLRB's jurisdictional standard of having more than $50,000 in transactions which affected interstate commerce. *See **Siemons Mailing Service***, 122 N.L.R.B. 81, 85 (158). The ALJ concluded that the Board was without jurisdiction but went on to discuss the merits of the complaint. (Hobart Complaint, Exhibit A, p. 1) The ALJ concluded that, "although Hobart Crane continually violated its collective bargaining agreement and concealed the violations from the Union," he could not conclude that laying off Bonick and Mason was motivated because they assisted the Union and engaged in concerted activities, constituting an unfair labor practice. *See* 29 U.S.C. §158(a)(3).  The ALJ's decision was upheld on May 10, 2002.

During the appeal of the NLRB decision, on April 10, 2001,

the parties also returned to the grievance process required by the collective bargaining agreement regarding the company's violation of the eight-hour provision. (Cmplt. ¶ 11) Because the dispute was not resolved by the Joint Grievance Committee, it was submitted to binding arbitration. (Cmplt. ¶ 11)

On May 30, 2002, arbitrator Neil M. Gunderman issued an arbitration award. (Cmplt. Exh. C, p. 36) The arbitrator concluded that Hobart Crane violated the collective bargaining agreement with regard to Bonick and Mason. (Cmplt. Exh. C, p. 36) The arbitrator described the work that these employees did for Hobart Crane, for which they were paid according to the rates established by the collective bargaining agreement, including the time spent operating rented cranes. (Cmplt. Exh. C, p. 6) The arbitrator also noted that when Bonick and Mason were not operating a rented crane, they engaged in other activities such as cutting, hauling or setting steel beams, and were paid a lessor rate associated with the non-union company, Hobart Welding. (Cmplt. Exh. C, p. 6) According to the grievants, this arrangement, splitting the employees' hours in a given day between the two companies based upon their activity, violated the collective bargaining agreement's eight-hour provisions. On behalf of the grievants, Local 150 further argued that Hobart Welding was the alter ego of Hobart Crane and, consequently, also liable.

The arbitrator concluded that the companies were not a single employer and that

> the company violated the collective bargain-

4

>ing agreement on numerous occasions. Such violations involved the Company's failure to pay the grievants, Mason and Bonick, for the entire day on those occasions when they performed bargaining unit work a portion of the day. Such work included not only the operation of cranes owned by the company, but also preventive maintenance performed on the cranes owned by the company. The Company also violated the collective bargaining agreement by failing to make the contractually mandated contributions to the funds specified in the agreement for those hours the grievants were not properly compensated.

>(Cmplt. Exh. C, p. 35)

The arbitrator awarded damages based on the difference between what Bonick and Mason actually were paid on the days that they performed union work and the rate they should have been paid according to the terms of the collective bargaining agreement. (Cmplt, Exh. C, p. 36) The Union contended that this amount could be determined from one of two formulas producing a damage amount for each individual somewhere between $24,000 and $56,000.

Following the arbitrator's award, the parties engaged in settlement discussions which were unsuccessful and lead to the scheduling of a second hearing before the arbitrator. *See Local 150 v. Hobart Crane, et. al.,* 2:04 CV 53, DE 1, ¶ 19. This was scheduled to be held in February 2003. However, this hearing was cancelled on the suggestion that the parties had reached agreement on the settlement terms. Approximately one year later, this settlement had not been finalized, and Local 150 filed a complaint in federal court seeking enforcement of an oral settlement agreement. *See Local 150*, 2:04 CV 53. Following discovery in that

5

action, Local 150 amended the complaint and phrased its entitlement to relief as the enforcement of the arbitration award, rather than the theory of an oral settlement agreement. Following this amendment, on August 17, 2005, the parties stipulated to the dismissal of this action without prejudice and returned to the arbitrator. In their stipulation, the parties noted that "should defendants fail to pay the arbitration award, plaintiffs will file another lawsuit against the defendants." *See Local 150*, 2:04 CV 53, DE 85, p. 2.

On November 22, 2005, approximately three and one-half years after his original award, the parties again were before arbitrator Neil Gundermann, and on May 15, 2006, Gundermann issued a "clarification of an arbitration award." He stated that the purpose of the clarification was to address the prior award's statement of the remedy, which had required Hobart Crane to pay Mason and Bonick the difference between their actual pay and what they were entitled to under the collective bargaining agreement. The task was complicated by the defendant's destruction of all payroll records, which the defendant indicated was done on the advice of its accountant.(Cmplt. Exh. D, p. 5)

The arbitrator recognized that, under the collective bargaining agreement's eight-hour provision, any day on which the grievants did any union work entitled them to pay for at least 8 hours work. The arbitrator then noted that, without considering overtime, the hours worked for Hobart Crane in a week should be

6

divisible by eight.[1] He next concluded that, based on the payroll stubs provided by the grievants, any hours (presumably weekly) not divisible by eight, "should be rounded up to the nearest number divisible by eight." He concluded that "The hours worked for the Company [Hobart Crane] should be rounded up to a number divisible by eight. The grievants are entitled to be compensated at the contractual rate for any additional hours resulting from this clarification."

In the complaint, Local 150 characterizes the arbitrator's formula as providing the grievants with "the difference between their weekly work hours and the closest number divisible by eight." Without illustrating how the projection was reached, Local 150 then states that this new formula produces the greatly reduced damage award between $4,300 and $9,500. (Cmplt ¶ 18) Local 150 seeks the vacation of the arbitrator's clarification, and an award from this court of $56,810.70 (Bonick) and $34,939.23 (Mason) which the union characterizes as "consistent with the undisputed, unrefuted evidence presented at the November 22, 2005 arbitration." (Cmplt ¶ 17)

On the same day that Local 150 filed its complaint, Hobart Crane filed a complaint based upon these facts seeking the vacation of the arbitration award and alleged that jurisdiction arose under §301 of the Labor Management Relations Act, the Federal Arbitration Act, and the Indiana Uniform Arbitration Act.

---

[1] The arbitrator's reasoning is accurate only if each grievant did at least some union work on each day of the week in question. If not, there is no reason the weekly total would be divisible by eight.

7

Hobart Crane based its bid for relief on its bankruptcy proceedings, which were completed by a final order closing the administration of the bankruptcy estate on June 8, 2005. In its complaint, Hobart Crane alleges that the enforcement of the arbitration award violates bankruptcy law.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004); ***Windle v. City of Marion***, ***Indiana***, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence***, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d

8

588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

9

149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-323, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc***., 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Hobart Crane claims that the court lacks jurisdiction over the claim. Specifically, Hobart Crane argues that subject matter jurisdiction is lacking because the company does not meet the $50,000 sales inflow-outflow threshold described in ***Siemons Mailing Service***, 122 NLRB 81, 85 (1958).

This court's jurisdiction arises from 29 U.S.C. §185 which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
>
> 29 U.S.C.A. §185(a)

This section provides a clear statement that the federal court's power may be exercised over "an industry affecting commerce," without consideration of the amount in controversy.

10

See *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Incorporated*, 935 F.2d 1501, 1503-04 (7th Cir. 1991)("[T]he statute can and should be stretched a bit to embrace all suits arising out of awards by arbitrators appointed under labor contracts, whether it is a suit to enforce or to set aside the award, and if the latter whether the suit is based on contractual or noncontractual grounds."); *Ganton Technologies, Inc. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W. Local 627*, 358 F.3d 459, 462 (7th Cir. 2004).

In making this argument, Hobart Crane has confused a discretionary standard by which the National Labor Relations Board determines its own jurisdiction to prevent unfair labor practices under 29 U.S.C. §160, with the jurisdiction granted to the federal court in 29 U.S.C. §185 to enforce contracts between an employer and labor organization. See *Blankenship and Associates, Inc. v. N.L.R.B.*, 999 F.2d 248, 250 (7th Cir. 1993). *See also N.L.R.B. v. Valentine Painting and Wallcovering, Inc*., 8 Fed. Appx. 116, 117 (2nd Cir. 2001). Hobart Crane's argument begins with the recognition that §185(a) is addressed to labor organizations "in an industry affecting commerce." However, its argument falters when it suggests that §185 confers jurisdiction only if the *employer* affects interstates commerce when it argues that the discretionary standard used to gauge the NLRB's jurisdiction is properly applied to the federal court.

This argument is not an accurate view of the court's juris-

11

diction under §185. First, the employer in an action arising under §185 is not subjected to an independent jurisdictional requirement, apart from its involvement in an industry affecting commerce.  In addition, there is no support for applying the NLRB's standard under §160 to the federal court's jurisdiction under §185. Hobart further provides no argument that supports imposing the NLRB's discretionary amount-in-controversy standard as a prerequisite to the court's exercise of subject matter jurisdiction. *See* **Woody v. Sterling Aluminum Products, Inc**., 243 F.Supp. 755, 762 (D.C. Mo. 1965)(*aff'd* 365 F.2d 448 (8th Cir. 1966), *cert. denied*, 386 U.S. 957, *reh'g denied*, 386 U.S. 1027 (1967))("Jurisdiction of claims for relief based on violation of a collective bargaining agreement is conferred upon district courts (without respect to the amount in controversy or without regard to the citizenship of the parties) by Section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. 185(a)."); *accord* **Panayi v. Northern Indiana Public Service Co.**  109 F.Supp.2d 1012, 1015 (N.D. Ind. 2000); **Kittle v. Prudential Ins. Co. of America**  102 F.Supp.2d 1029, 1033 (S.D. Ind. 2000)("Hence, any suit for violation of a contract between an employee's labor union and the employee's employer arises under federal law for jurisdiction purposes, even if a state contract or tort claim would provide a cause of action in the absence of §301."),

Finally, the court notes that in the prior action in federal court, Hobart Crane expressly stipulated to refiling suit and itself is a plaintiff in one of the actions consolidated in this

12

matter. In its complaint, Hobart Crane expressly invoked the court's jurisdiction under §185. While, as a general matter, subject matter jurisdiction is not subject to waiver, there is no attempt by Hobart Crane to reconcile this seemingly inconsistent approach.

Hobart Crane also seeks summary judgment on the basis that collateral estoppel bars the further litigation on the question of jurisdiction. Collateral estoppel, or issue preclusion, limits the litigation of issues that have been decided between parties in a prior action. *McNealy v. Caterpillar, Inc*., 139 F.3d 1113, 1116 (7th Cir. 1998). Generally, the doctrine applies when "(1) a material fact issue decided in the earlier adjudication is identical to the one in the current proceeding; (2) there was a final judgment on the merits in the earlier adjudication; and (3) the party against whom estoppel is asserted was a party or was in privity with a party in the earlier adjudication." *Goodwin v. Board of Trustees of University of Illinois*, 442 F.3d 611, 621 (7th Cir. 2006).

Hobart Crane's argument fails under the first step in applying issue preclusion. The issue that Hobart Crane seeks to preclude is the question of the federal court's jurisdiction under §185(a). Hobart Crane argues that the NLRB's jurisdictional conclusions should be given preclusive affect here.  As described above, the NLRB and this court face different jurisdictional questions, gauged by different standards. This court's jurisdic-tion to address a labor contract is not the same as the NLRB's

13

jurisdiction to prevent an unfair labor practice. The issue of this court's jurisdiction under §185(a) has no relationship with, and consequently no chance to be precluded by, a determination that the NLRB, according to its own discretionary standard, was without jurisdiction in a proceeding based on §160.  *See* ***Jarrard v. CDI Telecommunications, Inc***., 408 F.3d 905, 916 (7th Cir. 2005).

_____

For the foregoing reasons, the First Motion for Summary Judgment filed by the defendants on January 19, 2007, is **DENIED**.

ENTERED this 19th day of July, 2007

                                   s/ ANDREW P. RODOVICH
                                      United States Magistrate Judge