UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

INTERNATIONAL UNION OF           )
OPERATING ENGINEERS, LOCAL 150   )
AFL-CIO,                         )
                                 )
            Plaintiff            )
                                 )
        v.                       )   Case No. 2:06 cv 280
                                 )
HOBART CRANE RENTAL, INC., a     )
Corporation; HOBART WELDING &    )
FABRICATION, INC., a Dissolved   )
Corporation; TRIPLE "C"          )
CONSTRUCTION EQUIPMENT LEASING,  )
LLC., and X-PRESS CRANE          )
COMPANY, LLC., a Limited         )
Liability Company,               )
                                 )
            Defendants           )

OPINION AND ORDER

This matter is before the court on the Second Motion for Summary Judgment filed by the defendants, Hobart Crane Rental, Inc., Hobart Welding & Fabrication, Inc., Triple "C" Construction Equipment Leasing, LLC, and X-Press Crane Company, LLC, on January 9, 2008. For the reasons set forth below, the motion is **DENIED**.

Background

The background to this matter is taken, in part, from this court's prior order addressing the defendants' first motion for summary judgment. (Opinion and Order July 19, 2007) Hobart Welding and Fabrication was owned and operated by Robert Czarny. (Cmplt. ¶ 4; Exh. C, p. 4) Incorporated in 1978, the company

grew, and by 1991, Hobart Welding was a non-union company engaged in the fabrication and installation of steel beams used in residential construction. (Defs Memorandum, Exh A, p. 1) A separate company was incorporated in 1982 called Hobart Crane Rental. (Cmplt. Exh. C, p. 4) This company, engaged in the rental of cranes and operators to various contractors, was owned by Czarny's wife, Linda. (Cmplt. Exh. C, p. 4)

On May 22, 1991, Hobart Crane executed a memorandum of agreement with International Union of Operating Engineers, Local 150 AFL-CIO. By the terms of the agreement, Hobart Crane became subject to the collective bargaining agreement in place between Local 150 and the Calumet Building Association. (Cmplt, ¶¶ 7, 8) This agreement established a grievance and arbitration procedure that required the parties to enter a three-step process before a dispute reached arbitration. (Cmplt. ¶ 9) According to the agreement, the arbitrator's decision was binding on the parties to the master agreement. (Cmplt. ¶ 9)

The agreement also required the employer to pay any employee in the bargaining unit for a minimum of two hours time once the employee reported for work. (Cmplt. ¶ 9) If the employee began work, the employer was obligated to compensate the employee for a minimum of an eight-hour day. (Cmplt. ¶ 9)

In March 1999, a dispute arose between Hobart Crane and Local 150 which the parties did not resolve at the intermediate steps in the grievance process. The dispute centered upon two non-union Hobart Welding employees, Larry Mason and Jeffrey

Bonick, who were issued union permits to work as crane operators. (Cmplt. Exh. A, p. 1) On occasion, Bonick and Mason were assigned to work as crane operators for less than a full day and, upon completing this work, returned to work for the balance of the day at the lesser, Hobart Welding, non-union wage rate. (Cmplt. Exh. A, p. 1) After approximately two years, Mason and Bonick informed their employer that this pattern violated the collective bargaining agreement's eight-hour provision. (Cmplt. Exh. A, p. 2) Subsequently, Mason and Bonick were notified that Hobart Crane could not afford to pay them under this requirement, and both were laid off. (Cmplt. Exh. A, p. 2)

These events were the basis for a complaint before the National Labor Relations Board, alleging an unfair labor practice under 29 U.S.C. §158(a). On January 4, 2001, NLRB Administrative Law Judge Marion C. Ladwig determined that Hobart Crane did not meet the NLRB's jurisdictional standard of more than $50,000 in inflow or outflow. See *Siemons Mailing Service*, 122 N.L.R.B. 81, 85 (1958). The ALJ concluded that "although Hobart Crane continually violated its collective bargaining agreement and concealed the violations from the Union," he could not conclude that laying off Bonick and Mason was motivated because they assisted the Union and engaged in concerted activities, constituting an unfair labor practice. See 29 U.S.C. §158(a)(3). The ALJ's decision was upheld on May 20, 2001.

In addition, on April 10, 2001, the parties returned to the grievance process required by the collective bargaining agreement

regarding the company's violations of the eight-hour provision. (Cmplt. ¶ 11) Because the dispute was not resolved by the Joint Grievance Committee, it was submitted to binding arbitration. (Cmplt. ¶ 11)

On May 30, 2002, arbitrator Neil M. Gundermann issued an arbitration award. (Cmplt. Exh C, p. 36) The arbitrator concluded that Hobart Crane violated the collective bargaining agreement with regard to Bonick and Mason. (Cmplt. Exh. C, p. 36) The arbitrator described the work that these employees did for Hobart Crane for which they were paid according to the rates established by the collective bargaining agreement, including the time spent operating rented cranes. (Cmplt. Exh. C, p. 6) The arbitrator also noted that the employees were paid a lesser rate, associated with the non-union company, Hobart Welding, when they were not operating a crane and were engaged in other activities required to install the steel beam. (Cmplt. Exh. C, p. 6) According to the grievants, this arrangement - splitting the employees' hours in a given day between the two companies based upon their activity - violated the collective bargaining agreement's eight-hour provisions. On behalf of Mason and Bonick, Local 150 further argued that Hobart Welding was the alter ego of Hobart Crane and, consequently, also liable.

The arbitrator awarded damages based on the difference between what Bonick and Mason actually were paid on the days that they performed union work and the rate they should have been paid according to the terms of the collective bargaining agreement.

4

(Cmplt. Exh. C, p. 36) The union contended that this amount could be determined from one of two formulas producing a damage amount for each individual somewhere between $24,000 and $56,000.

Following the arbitrator's award, the parties engaged in settlement discussions which were unsuccessful and lead to the scheduling of a second hearing before the arbitrator. *See **Local 150 v. Hobart Crane, et. al.**,* 2:04 CV 53, Docket Entry 1, ¶ 19. This was scheduled to be held in February 2003. However, this hearing was cancelled on the suggestion that the parties had reached an agreement on settlement terms. However, one year later, this settlement had not been finalized, and Local 150 filed a complaint in federal court seeking enforcement of an oral settlement agreement. *See **Local 150**,* 2:04 CV 53. Following discovery in that action, Local 150 amended the complaint and rephrased the remedy it sought as the enforcement of the arbitration award, rather than the enforcement of an oral settlement agreement.

On October 17, 2004, Hobart Crane filed for Chapter 7 bankruptcy. The matter was discharged on June 8, 2005. In the bankruptcy proceeding, Hobart Crane listed Local 150 as a creditor for one dollar with respect to 2002 union dues, Neil M. Gundermann for $1,679.50 as the 2002 arbitration fees, and William E. Dugan, Local 150 president, for one dollar regarding 2002 union dues. (Defs Mot. for Summ. Jdgmt, Exh. DE 28-2, pp. 22, 25)

On August 17, 2005, the parties stipulated to the dismissal of the prior federal cause of action without prejudice and took the matter back to the arbitrator. In their stipulation, the parties noted that "should defendants fail to pay the arbitration award, plaintiffs will file another lawsuit against the defendants." See *Local 150*, 2:04 CV 53, Docket Entry 85, p. 2.

On November 22, 2005, approximately three and one-half years after his original award, the parties again were before Gundermann and on May 15, 2006, Gundermann issued a "clarification of an arbitration award." He stated that the purpose of the clarification was to address the prior award's statement of the remedy, which had required Hobart Crane to pay Mason and Bonick the difference between their actual pay and what they were entitled to under the collective bargaining agreement. The task was complicated by the defendant's destruction of all payroll records, which it indicated was done on the advice of its accountant.(Cmplt. Exh. D, p. 5)

In its complaint, Local 150 characterizes the arbitrator's formula as providing the grievant with "the difference between their weekly work hours and the closest number divisible by eight." Without illustrating how the projection was reached, Local 150 then states that this new formula produces the greatly reduced damage award between $4,300 and $9,500. (Cmplt ¶ 18) Local 150 seeks the vacation of the arbitrator's clarification, and an award from this court of $56,810.70 (Bonick) and $34,939.23 (Mason) which it characterizes as "consistent with the

6

undisputed, unrefuted evidence presented at the November 22, 2005 arbitration." (Cmplt ¶ 17)

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); ***Williams v. Excel Foundry & Machine, Inc***, 489 F.3d 309, 310 (7th Cir. 2007); ***Treadwell v. Office of the Illinois Secretary of State***, 455 F.3d 778, 781 (7th Cir. 2006); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information

before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). See also *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

See also *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record so

8

that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); **Celotex Corp.**, 477 U.S. at 322-23, 106 S.Ct. at 2553; **Branham**, 392 F.3d at 901; **Lawrence**, 391 F.3d at 841; **Hottenroth**, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); **Schuster v. Lucent Technologies, Inc.**, 327 F.3d 569, 573 (7th Cir. 2003).

In its motion, Hobart Crane first argues that the debt listed in the bankruptcy proceeding is "the same debt Local 150 wishes to enforce against Hobart Crane Rental." (Def. Mtn, p. 5) However, there is no indication in the record that wages owed Bonick and Mason of some amount between $14,000 and $90,000 was included in the bankruptcy discharge. In support of this conclusion, Hobart Crane points to two listings of $1.00 each for "union dues," a claim of approximately $1,500 due arbitrator Gundermann, and the listing of a separate cause of action in the Northern District of Illinois under ERISA to collect delinquent fringe benefit contributions. There is virtually nothing in the record to suggest that the amounts due Bonick and Mason were discharged in bankruptcy. To the extent that it is the defendants' burden, it has not met its burden of showing that no material fact is in dispute.

Assuming, as the court must, that Bonick and Mason's claims against Hobart Crane were not discharged, Hobart Crane further argues that its status under Chapter 7 of the bankruptcy code

renders it a defunct corporation no longer subject to suit. Specifically, Hobart Crane argues that it is entitled to "the same

status as a dissolved corporation after the two-year period allowed for winding up affairs."

The defendants cobble together this argument from a selective reading of Indiana's statutory provisions regarding the voluntary dissolution of an Indiana corporation. In general, the code spells out which entities may initiate dissolution, the steps that must be taken with the secretary of state, shareholder approval requirements, and the effect of dissolution. These provisions note that a "dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs." I.C. §23-1-45-5. The statute imposes a requirement that a dissolving corporation provide notice to claimants within specified time of the dissolution. I.C. §23-1-45-6. And finally, the statute allows for the corporation to publish notice of its dissolution in newspapers of general circulation and thereby create a two-year period of time in which certain claimants can seek to enforce their claims. I.C. §23-1-45-7(c). Claimants to whom this provision applies include "(1) A claimant who did not receive written notice under section 6 of this chapter; (2) A claimant whose claim was timely sent to the dissolved corporation but not acted on; (3) A claimant whose claim is contingent or

based on an event occurring after the effective date of dissolution."

Hobart Crane justifies the application of Indiana's voluntary dissolution statute based upon the fact that a discharge in Chapter 7 of the bankruptcy code renders a corporation defunct. However, Hobart Crane has provided no support for the direct application of this statutory scheme to a Chapter 7 corporation. Instead, it has noted other courts that have analogized to comparable state statutory schemes but also have cast doubt on such a direct application of state law to a bankruptcy proceeding. *See e.g.* ***U.S. Dismantlement Corporation v. Jeffrey M. Brown Associates***, No. Civ. A. 97-1309, 2000 WL 433971 (E.D. Pa. April 13, 2000)("[F]ederal bankruptcy law cannot effect the actual legal dissolution of a corporation incorporated under state law, it can and does operate to effectively end the corporation's real-world existence.").

However, even assuming its application, Hobart Crane has offered no argument to show that the claim at issue falls within one of the three categories of claimants described by the statute. Further, Hobart Crane has offered no facts to show that the claim asserted by Local 150 was not made in a timely manner under the statute. In fact, it is not clear when Hobart Crane would have this statutory two-year period commence when, pursuant to the statute, proper notice by publication commences this period. These shortfalls preclude summary judgment.

In addition, Hobart Crane practically has ignored the

existence of claims to enforce Mason and Bonick's award against corporations that the union has characterized as successors or alter ego corporations. Hobart Crane offered a single sentence on the topic. ("Nor can the debt be enforced against any alleged alter ego or successor to Hobart Crane Rental, Inc., because Local 150 failed to raise any issue regarding alter egos or successors during the bankruptcy proceedings.") (Motion, p. 9) In addition, in its reply, Hobart Crane has continued to avoid the topic, suggesting that the sole issue on which its entitlement to summary judgment relied was "whether Local 150's arbitration award was included in Hobart Crane Rental's bankruptcy." If this were the only issue, the court has concluded that Hobart has not met its burden.

Hobart Crane's position also overlooks the fact that the possibility of successor liability, even after a bankruptcy, raises questions of fact. See *Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin, Inc*., 59 F.3d 48, 51 (7th Cir. 1995)("But a second chance is precisely the point of successor liability, and it is not clear why an intervening bankruptcy proceeding, in particular, should have a *per se* preclusive effect on the creditor's chances."). Hobart Crane has offered no facts that require the conclusion that successor liability must be ruled out. Instead, the application of the doctrines to this matter will await the plaintiff's motion for summary judgment. In the meantime, the defendants' motion is **DENIED.**

_____

Based on the foregoing, the Second Motion for Summary Judgment filed by the defendants, Hobart Crane Rental, Inc., Hobart Welding & Fabrication, Inc., Triple "C" Construction Equipment Leasing, LLC, and X-Press Crane Company, LLC, on January 9, 2008, is **DENIED**. The Clerk is **DIRECTED** also to terminate the incorrectly filed copy of this motion at DE 26.

ENTERED this 22nd day of August, 2008

                                            s/ ANDREW P. RODOVICH
                                               United States Magistrate Judge